FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

24 DEC -6 PM 12: 32

| | |
|---|---|
| **The United States District Court District of Colorado**<br>901 19th St, Denver, CO 80294<br>(303) 844-3433<br>**Plaintiff(s)/Petitioner(s):** JOSHUA ABRAMS<br>v.<br>**Defendant(s)/Respondent(s):**<br>Division of Unemployment Insurance, Defendant<br>251 E 12th Ave Denver, CO 80203 | <br><br><br><br><br><br>**▲COURT USE ONLY▲** |
| **Attorney or Party Without Attorney (Name and Address):**<br>Joshua Abrams, Pro Se \| abramslive@gmail.com \| 609-968-9360<br>10722 N Parfet Street Westminster Co 80021 | Case Number:<br><br>Division:        Courtroom |
| **PLAINTIFF'S COMPLAINT** | |

Plaintiff, Joshua Abrams appearing Pro Se brings this action against the Colorado Department of Labor and Employment ("Defendant") for violations of his constitutional and statutory rights in the administration of his unemployment benefits and in the working conditions to which he was subjected. Plaintiff, a qualified unemployment claimant, earned wages across multiple states, which should have entitled him to a Combined-Wage Claim ("CWC") calculation under federal law. Instead of properly including his out-of-state earnings, Defendant improperly calculated Plaintiff's benefits using only a fraction of his total wages, dramatically reducing his payments and forcing him into severe financial hardship.

Compounding these errors, Defendant failed to provide accessible communication and appeals processes. Plaintiff, who has a disability covered by the Americans with Disabilities Act ("ADA"), was denied the reasonable accommodations needed to meaningfully challenge the miscalculation. Instead of allowing Plaintiff to address the exclusion of out-of-state wages, Defendant's appeals system funneled him into irrelevant procedural steps—such as withdrawing his initial application—while ignoring the substance of his claim. This lack of a fair, transparent, and effective review process violated Plaintiff's Fourteenth Amendment right to due process and deprived him of a timely remedy.

Defendant's disregard for accessibility and safety also extended to its handling of Plaintiff's work-related conditions. By operating without regard to the ADA's requirements and failing to implement even basic health and safety measures, Defendant placed Plaintiff in unsafe environments, ultimately leading to his exposure to and contraction of COVID-19. These conditions not only caused Plaintiff physical harm—necessitating hospitalization and resulting in significant ongoing medical expenses—but also curtailed his ability to seek stable employment aligned with his skills and aspirations. Instead,

he was forced to accept low-wage, high-risk labor out of desperation, further undermining his economic and personal stability.

This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as the action arises under the Constitution and laws of the United States, including the Fourteenth Amendment and the Americans with Disabilities Act. Supplemental jurisdiction over any related state law claims is proper under 28 U.S.C. § 1367, as these claims are so related to the federal claims that they form part of the same case or controversy. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), since a substantial part of the events or omissions giving rise to these claims occurred within the District of Colorado, and Defendant's principal place of business is located therein.

Plaintiff Joshua Abrams is an individual residing in the State of Colorado who, at all relevant times, was a qualified unemployment claimant under federal and state law. Plaintiff is also a qualified individual with a disability within the meaning of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131–12134. Defendant, the Colorado Department of Labor and Employment (CDLE), is a state agency and public entity as defined by Title II of the ADA, responsible for administering unemployment benefits and ensuring compliance with all applicable federal and state laws, including those related to due process, disability accommodation, and the proper calculation of unemployment benefits.

**FACTUAL BACKGROUND**

1. **Initial Claim and Failure to Include Out-of-State Wages**: On or around March 3, 2023, Plaintiff lost his employment and promptly filed for unemployment benefits with the Colorado Department of Labor and Employment ("Defendant"). During the relevant base period, Plaintiff had earned wages both in Colorado and in North Carolina, qualifying him for a Combined-Wage Claim ("CWC") under the Federal Unemployment Tax Act. Despite Plaintiff's clear eligibility and the exhaustion of his North Carolina benefits, the Defendant failed to incorporate any out-of-state wages into his benefit calculation. As a result, Plaintiff's weekly benefit was **improperly reduced** to $119—reflecting only a few weeks of Colorado earnings—rather than the substantially higher amount he was entitled to. With a **monthly benefit of merely $476**, Plaintiff was unable to meet basic financial obligations, including rent, thereby subjecting him to severe economic distress during an already precarious period.

2. **Wage Correction Efforts**: In an effort to address the exclusion of his North Carolina wages, Plaintiff submitted multiple wage correction forms to Defendant. Despite these good-faith attempts, Defendant either wholly disregarded the submissions or demonstrated a fundamental misunderstanding of the governing Combined-Wage Claim (CWC) requirements. Although Plaintiff's unemployment portal confirmed that his North Carolina earnings were on record, Defendant repeatedly failed to incorporate them into the benefit calculation. This persistent refusal or inability to properly account for out-of-state wages compounded Plaintiff's financial hardship and prolonged the underlying error. Moreover, when Plaintiff sought assistance by phone and in person, Defendant's representatives conceded that he was entitled to higher benefits but insisted that the only available remedy was to withdraw his claim—an unnecessary and irrelevant procedure that did nothing to correct the underlying miscalculation.

3. **Failures to Communicate:** The telephone system, which claimants were repeatedly instructed to use, proved to be fundamentally inaccessible and unresponsive. Calls would frequently fail to connect altogether, abruptly disconnect after initial greetings, or present an estimated queue of over one hundred callers, making it impractical to wait on the line. On the occasions when claimants were offered a callback feature, the return calls were often mishandled—ringing only once before the line went dead, or connecting to a representative who would suddenly claim to be unable to hear the caller and terminate the conversation, sending the claimant back to the end of the queue. In some instances, it appeared that employees or the antiquated system itself were dismissing calls to clear the queue, depriving claimants of any genuine opportunity to address their concerns. Further complicating matters was the Defendant's reliance on an AI-driven call filter. This system provided no clear guidance on its limited capabilities, prompting claimants to try multiple variations of questions, only to discover the AI could handle a mere handful of inquiries. When the system purportedly offered to transfer the caller to a live representative, it would frequently fail and disconnect. At no point did the Defendant provide a consistently reliable method of reaching a qualified representative by phone.

4. **Appeals Process Barriers**: When Plaintiff attempted to challenge the miscalculation through the Defendant's administrative appeals process, he encountered systemic obstacles. Both the telephone and online appeal systems required claimants to select from a narrow set of predefined "decisions," none of which addressed the substantive issue of excluding out-of-state wages. As a result, Plaintiff was forced to file appeals on unrelated procedural grounds, such as withdrawing his original application, as this was the only category available, this effectively

preventing Plaintiff from raising the central issue of wage miscalculation. This rigid appeals structure ensured that each of Plaintiff's appeals led to a procedural dead-end, never reaching the merits of the claim. Which was ultimately unable to consider or give due process for this denial of correct benefits and back pay.

5. **Appeals Attempts and Outcomes**: For instance, on March 24, 2023, Plaintiff filed an appeal that could not address the actual underpayment. On March 31, 2023 (Docket ID 10116-2023, Claimant ID 22683759, Issue ID 22289233), the Deputy Hearing Officer dismissed this appeal without ever examining the excluded out-of-state wages. Similarly, after receiving another decision on April 5, 2023 (Docket ID 11944-2023), Plaintiff filed a subsequent appeal on April 10, 2023. The Defendant's May 24, 2023 notice again focused solely on the withdrawal issue, sidestepping the wage miscalculation. Plaintiff's repeated attempts to draw attention to the North Carolina wages were thus thwarted by an appeals system designed to avoid the substantive question at hand, depriving him of any meaningful forum to address the core error.

6. **Systemic and Technical Failures**: Compounding these procedural roadblocks, Plaintiff faced significant technical difficulties in the initial weeks of his claim. Errors involving the ID.me verification system and the inability to upload identification documents delayed processing and locked Plaintiff out of critical online functions. The Defendant's virtual assistant and automated phone systems frequently disconnected calls and offered no reliable means to schedule remote appointments or otherwise communicate with a claim agent. Stripped of any functional remote communication options, Plaintiff was forced to make multiple in-person visits to Defendant offices. These visits required him to wait in crowded lobbies and use shared telephones under unsanitary conditions, thereby exposing him to heightened health risks amid the COVID-19 pandemic.

7. **Health Consequences of In-Person Visits**: Forced into these unsafe, in-person environments due to the Defendant's failure to provide accessible and effective alternatives, Plaintiff ultimately contracted COVID-19. He experienced severe respiratory complications, including frequent loss of consciousness, necessitating hospitalization, where a COVID-19 positive test confirmed the infection. This entirely preventable harm flowed directly from the Defendant's refusal to offer viable remote communication options or ensure a safe process for claimants, further compounding the physical, emotional, and financial burdens Plaintiff already faced.

8. **Partial Acknowledgment and Continuing Nonpayment**: In July 2023, after Plaintiff escalated his concerns to a supervisor, the Defendant conceded that he was owed approximately $3,000 in back pay. However, Plaintiff's calculations indicated that a figure closer to $6,000 would have been correct had all of his North Carolina wages

been properly considered. The Defendant's partial acknowledgment was premised on a misapplication of "double-dipping" rules, which Plaintiff repeatedly clarified did not apply since his North Carolina benefits were fully exhausted. Despite admitting that several months of Plaintiff's employment had not been filed correctly, the Defendant provided no definitive timeline for resolution and continued to ignore Plaintiff's written communications and follow-up submissions. Nearly a year later, no back pay has been issued, leaving Plaintiff without recourse or clarity, and effectively abandoned by the very agency tasked with assisting him.

9. **Exhaustion of Administrative Remedies**: Seeking an administrative remedy, Plaintiff submitted over twenty pages of evidence to the Colorado Attorney General's Liability Office, docketed as <u>L095240</u>. On November 3, 2023, the Attorney General's office responded with a blanket denial, claiming immunity and offering no substantive engagement with the factual allegations. This generic and dismissive response represented yet another failure of the administrative remedy process, compounding the original harm and leaving Plaintiff with no alternative but to seek relief through this legal action.

The Defendant's failure to properly calculate Plaintiff's benefits, its restrictive and convoluted appeals process, its refusal to implement accessible communication methods, and its neglect in addressing wage miscalculations have collectively deprived Plaintiff of due process, caused significant financial and personal harm, and have ultimately forced him to pursue judicial intervention.

**COUNT I: Violation of Procedural Due Process – Fourteenth Amendment (42 U.S.C. § 1983)**

The Due Process Clause of the Fourteenth Amendment forbids a state from depriving any person of a protected property interest without adequate notice and a meaningful opportunity to be heard. Unemployment benefits, once established as lawfully owed, constitute a protected property interest. At the time Plaintiff Joshua M. Abrams sought these benefits, federal and state law entitled him to have all qualifying wages—including those earned out of state—incorporated into the calculation of his benefit amount under the Combined-Wage Claim ("CWC") system. This legal framework vested the Plaintiff with a legitimate expectation of receiving the full level of benefits commensurate with his complete wage history.

The Defendant violated the Plaintiff's procedural due process rights by failing to properly include his North Carolina wages in the benefits calculation. Instead of applying all eligible earnings, the Defendant considered only a narrow portion of his Colorado wages, drastically reducing the Plaintiff's weekly benefit amount and leaving him with a sum far below

what the CWC system mandates. This miscalculation deprived Plaintiff of the rightful benefits for which he had a constitutionally protected expectation.

To remedy this error, the Plaintiff submitted wage correction forms and attempted to invoke the administrative appeals process. However, the Defendant restricted his avenues for redress to procedural and peripheral issues, effectively precluding him from ever presenting the core substantive claim: that his out-of-state wages had been improperly excluded. Rather than providing a platform to dispute the miscalculation, the Defendant's appeal mechanisms steered the Plaintiff toward irrelevant procedural paths (such as withdrawing his application) and consistently failed to engage with the essential issue of the missing North Carolina wages. As a result, Plaintiff was never afforded the meaningful hearing or substantive consideration that due process requires.

Compounding this violation was the Defendant's failure to provide clear notice or explanation regarding why the out-of-state wages were omitted. Without understanding the rationale behind the exclusion, the Plaintiff could not effectively challenge it. This lack of adequate notice, combined with the artificially limited scope of the appeals process, rendered the Plaintiff incapable of correcting a fundamental mistake in the benefits determination—thus denying him a fair opportunity to be heard on the matter.

By constraining the Plaintiff to procedural dead-ends and withholding a meaningful forum to contest the substantive underpayment, the Defendant created a process that was fundamentally unfair and constitutionally deficient. Without the ability to secure the full benefits he was owed, the Plaintiff endured severe financial strain, including difficulty paying rent and meeting basic living expenses, as well as significant emotional distress. These hardships were avoidable: proper procedural safeguards would have allowed the Plaintiff to rectify the wage calculation error and receive the benefits to which he was lawfully entitled.

The Defendant's conduct—including the improper exclusion of the Plaintiff's out-of-state wages, the lack of any meaningful explanation or notice for that exclusion, and the artificial narrowing of the appeals process to non-substantive, procedural matters—constituted a clear violation of the Fourteenth Amendment's guarantee of procedural due process. Moreover, after the Plaintiff submitted over twenty pages of evidence to the Colorado Attorney General's Liability Office (docketed as L095240), the state's cursory and non-responsive copy and paste default denial without reason or engagement on November 3, 2023, further exemplified the breakdown of administrative remedies. Faced with both the Defendant's

obstructive conduct and the Attorney General's office's refusal to substantively engage with his claims, the Plaintiff was left no alternative but to seek judicial relief.

**COUNT II: Failure to Provide Adequate Procedural Safeguards – Fourteenth Amendment (42 U.S.C. § 1983)**

Procedural due process under the Fourteenth Amendment requires that state agencies implement and maintain adequate safeguards to prevent erroneous deprivations of protected property interests. When these interests involve a claimant's primary source of income—such as unemployment benefits—the constitutional mandate for meaningful review and fair administrative procedures becomes even more critical.

In Plaintiff's case, this mandate was disregarded. Although the Plaintiff depended on receiving his full unemployment benefits to maintain basic financial stability, the Defendant failed to provide a review mechanism that addressed the substantive issue at the heart of his claim: the improper exclusion of out-of-state wages. Despite submitting wage correction forms and repeatedly seeking to correct the miscalculation, the Plaintiff was channeled into an appeals system that permitted challenges only to peripheral procedural matters rather than the core deprivation of legally owed benefits.

This artificially constrained appeals process precluded the Plaintiff from contesting the substantive wage exclusion itself. Instead of allowing the Plaintiff to present evidence, clarify misunderstandings, or otherwise engage with the reasons behind the benefit miscalculation, the Defendant's system funneled him into procedural dead-ends—such as appeals focusing solely on withdrawing his original application. At every turn, the Plaintiff was denied a meaningful opportunity to address the central issue: that the Defendant had failed to incorporate his North Carolina wages, thereby unlawfully reducing his monthly benefit amount and causing ongoing financial and emotional harm.

By failing to provide a meaningful procedural avenue to challenge the erroneous exclusion of the Plaintiff's wages, the Defendant ensured a fundamentally flawed outcome. Had the Plaintiff been afforded the due process safeguards required by law—such as a proper hearing to address the underlying wage miscalculation—he could have corrected the error, secured the benefits to which he was entitled, and avoided unnecessary financial hardship. Instead, the Defendant's refusal to confront the core issue ensured that the Plaintiff remained underpaid and effectively without recourse.

This failure extended beyond communication shortcomings, permeating the Defendant's appeals and support processes. Rather than offering a genuine avenue for resolution, the Defendant's supervisors and agents claimed they were bound by

"the system," relying on misinterpretations of federal regulations or personal assumptions to justify inaction. Such rationalizations do not represent a lawful or good-faith effort to uphold the statutory protections and remedies that these programs are intended to provide.

Compounding the harm, after the Plaintiff attempted to find relief through other administrative channels by submitting substantial evidence to the Colorado Attorney General's Liability Office, he received only a cursory, nonresponsive denial. This further demonstrated the absence of any effective administrative remedy. The Defendant's failure to provide the necessary procedural safeguards at the outset, coupled with subsequent administrative refusals to engage meaningfully with the facts, forced the Plaintiff into a prolonged and fruitless process—one incapable of correcting the underlying wage miscalculation.

In depriving the Plaintiff of a meaningful forum to challenge the substance of his claim and failing to offer any subsequent mechanism to rectify its own errors, the Defendant violated the Plaintiff's rights to procedural due process. This constitutional deprivation inflicted lasting financial and emotional harm on the Plaintiff, who now seeks appropriate relief to redress the damage caused by the Defendant's constitutionally inadequate procedures.

At the time Plaintiff became eligible for unemployment benefits under federal and state law—including the Combined-Wage Claim (CWC) system—he acquired a constitutionally protected property interest in those benefits. Once this property interest attached, the Fourteenth Amendment required that Defendant provide adequate notice and a meaningful opportunity to challenge any adverse determination, including the improper exclusion of out-of-state wages. By limiting Plaintiff's appeal options to irrelevant procedural categories, failing to notify him of the reasons for excluding his North Carolina wages, and denying a hearing that addressed the underlying wage miscalculation, Defendant created a process designed to circumvent the substantive merits of Plaintiff's claim. This procedural structure violated Plaintiff's due process rights by preventing him from securing the full benefits owed to him and by offering no genuine avenue for correcting a fundamental error in his benefit calculation.

**COUNT III: Violation of the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.)**

Under Title II of the Americans with Disabilities Act ("ADA"), public entities are required to ensure that qualified individuals with disabilities receive full and equal access to the services, programs, and activities they provide. This includes the provision of reasonable modifications, effective communication methods, and nondiscriminatory policies that

accommodate the unique needs of persons with disabilities. Plaintiff Joshua M. Abrams, an individual with autism and related mental health conditions, falls squarely within the ADA's definition of a qualified individual with a disability, as his impairments substantially limit one or more major life activities and affect his ability to navigate complex administrative processes without appropriate support.

The Defendant, as a public entity, had an affirmative duty to provide the Plaintiff with accessible means of engaging in the unemployment benefits process. Instead, the Defendant relied on telephone and virtual systems that were functionally inaccessible to someone with Plaintiff's particular needs. The automated AI-driven phone platform frequently disconnected, provided no reliable means of reaching a live representative, and failed to offer clear instructions on its limited capabilities. By not implementing alternative communication methods—such as live agent support, effective remote tools, or a functional online messaging system—the Defendant erected barriers that prevented the Plaintiff from effectively managing his claim, clarifying the exclusion of out-of-state wages, or obtaining the reasonable assistance necessary to receive the full benefits owed to him.

The Defendant's failure to accommodate these disabilities was especially egregious during the COVID-19 pandemic. Without any viable remote accommodation or functional communication pathway, the Plaintiff was forced into repeated in-person visits to the Defendant's offices. There, he encountered crowded waiting rooms, unsanitized communal phones, and the need to rely on public transportation, all of which elevated his risk of exposure to the virus. This arrangement was not only unsafe but entirely avoidable had the Defendant complied with its obligation to provide reasonable modifications. By forcing the Plaintiff into environments that posed unnecessary health risks and intensified the stress and complexity of seeking essential benefits, the Defendant effectively denied him the equal opportunity to benefit from the unemployment insurance system afforded to individuals without disabilities.

As a direct result of the Defendant's failure to provide reasonable accommodations, the Plaintiff contracted COVID-19, resulting in severe medical complications, hospitalization, and ongoing emotional distress. This preventable harm is a concrete manifestation of the Defendant's disregard for the ADA's core mandates. The Plaintiff was neither given equal access to critical services nor afforded a means to safely communicate and advocate on his own behalf. By excluding him from the fair, accessible, and nondiscriminatory process that the ADA requires, the Defendant violated federal law and caused lasting personal, financial, and health-related injuries to the Plaintiff.

Plaintiff is a qualified individual with a disability, as defined by Title II of the ADA, because his autism and related mental health conditions substantially limit one or more major life activities and affect his ability to navigate complex administrative procedures without reasonable support. Defendant, as a public entity receiving federal funding and administering a public benefit program, had an affirmative duty to provide effective and accessible methods of communication, as well as reasonable modifications, to ensure that Plaintiff could fully and equally participate in the unemployment benefits system. Instead, Defendant relied on inaccessible phone systems, failed to provide viable remote alternatives during a public health crisis, and disregarded the need for accommodations that would have allowed Plaintiff to correct the miscalculation of his benefits without exposing himself to health hazards. By withholding these necessary modifications and denying Plaintiff meaningful access, Defendant violated the ADA's core requirement that individuals with disabilities have equal opportunity to obtain and maintain benefits offered by public entities.

**COUNT IV: Negligence – Failure to Provide Safe and Accessible Communication Channels**

Negligence arises when a party owing a duty of care fails to exercise reasonable care, resulting in foreseeable harm to another. Here, the Defendant owed the Plaintiff, as a claimant reliant upon its unemployment benefits system, a clear duty to provide safe, accessible, and reliable channels of communication, particularly during a known public health crisis. This obligation was not ancillary—it was integral to ensuring that eligible claimants, including those with disabilities and those vulnerable due to economic hardship, could secure the benefits they were lawfully entitled to without unnecessary risk to their health and well-being.

The Defendant breached this duty in multiple, interrelated ways. It implemented and maintained fundamentally flawed communication systems, including a telephone platform that repeatedly disconnected claimants, forced them through overly long queues without progress, and effectively precluded any meaningful contact with a qualified representative. The Defendant compounded this failure by relying on an AI-driven call filter that offered no clear instructions and recognized only a handful of inquiries, thereby impeding the Plaintiff's ability to obtain clarification, submit documentation, or rectify errors in his claim. Despite the Plaintiff's dire financial circumstances and the well-documented challenges of the COVID-19 pandemic, the Defendant provided no functional remote alternatives—no direct electronic communication methods through the claimant portal and no reliable means of bypassing the broken phone system.

Instead, the Plaintiff was forced to rely on outdated methods such as fax or postal mail. These channels were both time-consuming and costly, imposing further burdens on a claimant already experiencing financial distress. Lacking viable remote solutions, the Plaintiff was ultimately compelled to attend in-person appointments. This forced him to wait in crowded lobbies, use shared and unsanitized telephones, and utilize public transportation to reach these offices—conditions that predictably increased his risk of contracting COVID-19. The Defendant made these decisions despite widespread public awareness of the risks associated with in-person gatherings during the pandemic and the availability of safer alternatives. By ignoring these hazards, the Defendant recklessly endangered the Plaintiff's health and safety, resulting in severe respiratory complications, hospitalization, and emotional distress.

The online claimant portal also offered no viable communication alternative. While it allowed the Defendant to send determination letters and notices, it did not permit claimants to respond or initiate contact electronically. The only official channels to submit supporting information, appeals, or questions were either by fax—a technology increasingly unavailable or unreliable for many—or by postal mail, which imposed additional costs and delays. With the Plaintiff experiencing severe financial hardship, even purchasing postage was a burden, forcing him to rely on public facilities such as libraries, where exposure to inclement weather and unsanitary conditions posed additional risks, particularly during a public health crisis.

Even resorting to in-person visits brought no meaningful relief. Multiple attempts to resolve issues face-to-face were similarly unproductive, ultimately offering no pathway to correct the underpayment or to secure the full benefits owed. In sum, every avenue of communication was systematically obstructed or rendered ineffective, leaving the Plaintiff without any reasonable means of rectifying the errors in his benefits determination.

This negligence compounds with the Defendant's earlier failures to meet its constitutional and statutory obligations. The lack of accessible, safe communication options not only deepened the Plaintiff's financial and emotional suffering but also served as a practical barrier that prevented him from exercising his due process rights and from receiving the reasonable accommodations mandated by the ADA. In other words, the Defendant's negligent conduct was part and parcel of the same systemic disregard for claimant rights and protections described in the preceding counts.

In view of these facts, the Defendant's negligence was both foreseeable and avoidable. Safe and effective communication methods were readily accessible, and the Defendant knew or should have known that forcing claimants to endure

prolonged wait times, persistent disconnections, and unsafe in-person visits would inevitably cause harm. By failing to take reasonable measures to provide accessible and safe communication channels, the Defendant breached its duty of care and inflicted direct, tangible injury upon the Plaintiff.

Moreover, the Defendant's failure extended beyond the communication framework to the appeals and support processes. Rather than ensuring a meaningful avenue for relief, the Defendant's supervisors and agents claimed they were limited to "following the system," deflecting responsibility behind a computer screen, misunderstood policies, or personal interpretations of federal law. These justifications do not reflect a lawful or good-faith effort to uphold the intended protections and remedies guaranteed by governing statutes.

Under Colorado law, Defendant owed Plaintiff a duty of reasonable care in the administration of his unemployment claim and in the manner services were provided, particularly under foreseeable hazardous conditions like a global pandemic. This included offering safe, accessible, and effective methods of communication, as well as avoiding unnecessary in-person visits that posed known health risks. By refusing to provide functional remote options, relying on antiquated and unreliable communication systems, and forcing Plaintiff into crowded, unsanitary environments—where the risk of contracting COVID-19 was evident—Defendant breached this duty of care. The harm Plaintiff suffered was entirely foreseeable and preventable had Defendant exercised basic care and diligence. The resulting medical complications, emotional distress, and financial losses demonstrate a clear causal link between Defendant's negligence and the injuries Plaintiff sustained.

As a direct result of the Defendant's negligence, the Plaintiff experienced serious medical injuries, emotional trauma, and ongoing financial hardship. Had the Defendant exercised even basic care and provided functional remote accommodations, fair opportunities for communication, and adequate safety measures, the Plaintiff's illness, distress, and economic losses could have been prevented. Accordingly, the Plaintiff seeks compensatory and, where warranted, punitive damages, as well as any other relief this Court deems appropriate to hold the Defendant accountable for its negligent conduct and to prevent similar harm from befalling others.

**LEGAL AUTHORITIES**

These authorities in support of the Plaintiff demonstrate that the Defendant's conduct—ranging from inadequate procedural protections and failure to provide required accommodations, to the negligent endangerment of claimants' health—violated well-settled constitutional, statutory, and common-law standards.

**Due Process Claims (Fourteenth Amendment)**

- **Goldberg v. Kelly, 397 U.S. 254 (1970)**: Holds that government-administered benefits constitute a property interest protected by the Due Process Clause. Claimants must be afforded an opportunity to be heard at a meaningful time and in a meaningful manner before benefits are terminated or reduced.
- **Mathews v. Eldridge, 424 U.S. 319 (1976)**: Establishes the balancing test for what procedural safeguards are required. Adequate notice and a meaningful opportunity to challenge adverse actions are necessary to satisfy due process, especially where essential benefits are at stake.
- **California Dep't of Human Res. Dev. v. Java, 402 U.S. 121 (1971)**: Reinforces that unemployment benefits determinations must be prompt and fair, ensuring that claimants are not improperly deprived of critical financial support.
- **42 U.S.C. § 1983**: Authorizes a private right of action against state actors who violate constitutional rights, including due process rights in the context of government-administered benefits.
- **20 C.F.R. Part 616**: Governs the Interstate Arrangement for Combining Employment and Wages, obligating agencies to accurately incorporate out-of-state earnings into unemployment calculations. Failure to comply with this regulatory framework deprives claimants of legally entitled benefits and thus implicates due process concerns.

**Americans with Disabilities Act (ADA) Claims**

- **42 U.S.C. §§ 12131–12134 (Title II of the ADA)**: Requires public entities to ensure that qualified individuals with disabilities receive equal access to services, programs, and activities. This includes the duty to provide reasonable modifications or accommodations.
- **Tennessee v. Lane, 541 U.S. 509 (2004)**: Confirms that public entities must make their services accessible to individuals with disabilities, reinforcing Title II requirements.
- **Alexander v. Choate, 469 U.S. 287 (1985)**: Clarifies that ensuring "meaningful access" to public benefits is a core principle of disability discrimination law, going beyond mere formal equality.
- **McGucken v. City of Aspen, No. 17-cv-02109 (D. Colo. 2018)**: Recognizes that the failure to provide reasonable accommodations for individuals with disabilities in the administration of public services constitutes a violation of the ADA.

- **28 C.F.R. §§ 35.130, 35.160**: Federal regulations under Title II mandate effective communication with persons with disabilities, requiring public entities to furnish appropriate auxiliary aids and services to afford equal opportunity and prevent discrimination.

**Negligence Under Colorado Law**

- **Westin Operator, LLC v. Groh, 347 P.3d 606 (Colo. 2015)**: Confirms that entities owe a duty of reasonable care under foreseeable conditions and may be liable for failing to maintain safe environments for those they serve.
- **University of Denver v. Whitlock, 744 P.2d 54 (Colo. 1987)** and **Anderson v. Watson, 953 P.2d 1284 (Colo. 1998)**: Recognize the duty to exercise reasonable care where harm is foreseeable, supporting a negligence claim where an entity's conduct increases the risk of injury or illness.
- **Torts §§ 281-283**: These principles guide Colorado courts in assessing duty, breach, and causation. They provide a well-established standard for determining whether the Defendant's conduct was unreasonable under the circumstances.

**CONCLUSION**

The Defendant's actions, policies, customs, omissions, and systemic failures collectively deprived Plaintiff of his constitutional right to due process, the reasonable accommodations guaranteed by the ADA, and the benefits and protections that should have been readily available through the state's unemployment system. Instead of receiving the timely, accurate, and accessible service that the law requires, Plaintiff was subjected to an unresponsive appeals process, inaccessible communication channels, and an environment that placed his physical health at grave risk. The improper exclusion of out-of-state wages, coupled with the refusal to provide meaningful avenues to correct the error, caused direct financial harm and forced Plaintiff into precarious and poorly compensated employment, thereby depriving him of the opportunity to secure stable, suitable work in his field. The cumulative effect of these failures plunged Plaintiff into severe economic hardship, necessitating substandard living conditions, inducing emotional distress, and ultimately leading to serious illness and hospitalization due to COVID-19 exposure. In doing so, the Defendant disregarded essential legal obligations, neglected duties of care, and eroded the fundamental trust that claimants must be able to place in public administration.

Defendant cannot invoke immunity to shield itself from liability for the constitutional and federal law violations at issue. As a public entity, Defendant remains subject to the Fourteenth Amendment and must comply with the requirements of the Americans with Disabilities Act. Federal civil rights statutes, including 42 U.S.C. § 1983 and Title II of the ADA, create direct obligations that supersede any state-law immunities or doctrines. The existence of immunity provisions does not bar these claims, nor do they absolve Defendant of its responsibility to respect, uphold, and enforce the Plaintiff's federally protected rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and award the following relief:

1. **Compensatory Damages:** An award of no less than **$150,000**, or such greater amount as the Court deems fair and appropriate, to compensate Plaintiff for the direct and consequential harms inflicted by Defendant's conduct. This includes, but is not limited to, the monetary loss from improperly calculated benefits, the physical harm and hospitalization stemming from unsafe in-person visits, the emotional distress and hardship caused by inadequate communication and appeals processes, the career setbacks resulting from lost employment opportunities and the inability to seek stable work in the Plaintiff's field, and the overall disruption to Plaintiff's health, livelihood, and housing stability.

2. **Further Relief:** Any additional remedies that the Court finds just and equitable, including measures aimed at preventing similar violations in the future and safeguarding other claimants from enduring comparable injustices.

By awarding these damages, the Court can restore to Plaintiff the dignity, financial stability, health, and professional opportunities unjustly denied by Defendant. This relief not only makes Plaintiff whole but also ensures that Defendant meets its legal obligations and reinforces the principles of due process, fairness, and equal access.

Date: 12-05-2024

☐ Petitioner/Plaintiff
Joshua Abrams, Pro Se | abramslive@gmail.com | 609-968-9360

10722 N Parfet Street Westminster Co 80021

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Colorado

| | | |
|---|---|---|
| _Joshua Abrams_ | ) | |
| _Plaintiff_ | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| _Colorado Division of Unemployment_ | ) | |
| _Defendant_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Division of Unemployment Insurance
251 E 12th Ave Denver Co 80203

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____
                                                              *Signature of Clerk or Deputy Clerk*

☐▴AO 398   (Rev. 12/93)

# United States District Court

### District of Colorado

## NOTICE OF LAWSUIT AND REQUEST FOR
## WAIVER OF SERVICE OF SUMMONS

TO:    ( _____

as      ( _____ of (C) _____

      A lawsuit has been commenced against you (or the entity on whose behalf you are addressed).  A copy of the complaint is attached to this notice.  It has been filed in the United States District Court for the (D) _____ District of _____ and has been assigned docket number (E) _____ .

      This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint.  The cost of service will be avoided if I receive a signed copy of the waiver within (F) _____ days after the date designated below as the date on which this Notice and Request is sent.  I enclose a stamped and addressed envelope (or other means of cost-free return) for your use.  An extra copy of the waiver is also attached for your records.

      If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you.  The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

      If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service.  In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

      I affirm that this request is being sent to you on behalf of the plaintiff, this _____ day of _____ , _____ .

 

                                     _____
                                     Signature of Plaintiff's Attorney
                                     or Unrepresented Plaintiff

A—Name of individual defendant (or name of officer or agent of corporate defendant)
B—Title, or other relationship of individual to corporate defendant
C—Name of corporate defendant, if any
D—District
E—Docket number of action
F—Addressee must be given at least 30 days (60 days if located in foreign country) in which to return waiver

**United States District Court**

**District of**
**Colorado**

## WAIVER OF SERVICE OF SUMMONS

V.

CASE NUMBER:

### NOTICE

TO:

     I acknowledge receipt of your request that I waive service of summons in the action of _____

Caption of Action

_____,which is case number _____in the United States District Court for the District of

Docket Number

Colorado. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

     I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

     I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

     I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after _____, (date request was sent), or within 90 days after that date if the request was sent outside the United States.

_____       _____

(Date)                           (Signature)

Printed/Typed Name: _____

[as _____ ]

[of _____ ]

Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

     It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

     A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

**United States District Court**

**District of**
**Colorado**

## WAIVER OF SERVICE OF SUMMONS

V.

CASE NUMBER:

## NOTICE

TO:

        I acknowledge receipt of your request that I waive service of summons in the action of _____
Caption of Action

_____,which is case number_____in the United States District Court for the District of
Docket Number

Colorado.  I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

        I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

        I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

        I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after _____, (date  request was sent), or within 90 days after that date if the request was sent outside the United States.

_____     _____
(Date)                  (Signature)

Printed/Typed Name: _____

[as _____ ]

[of _____ ]

**Duty to Avoid Unnecessary Costs of Service of Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint.  A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property.  A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court.  If the answer or motion is not served within this time, a default judgment may be taken against that defendant.  By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Colorado

| | |
|---|---|
| _Joshua Abrams_ | ) |
| Plaintiff | ) |
| | ) |
| v. | )     Civil Action No. |
| | ) |
| _Colorado Division of Unemployment_ | ) |
| Defendant | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Division of Unemployment Insurance
251 E 12th Ave Denver Co 80203

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                          *Signature of Clerk or Deputy Clerk*

AO 398  (Rev. 12/93)

# United States District Court
## District of Colorado

## NOTICE OF LAWSUIT AND REQUEST FOR
## WAIVER OF SERVICE OF SUMMONS

TO:    ( _____

as    ( _____ of (C) _____

      A lawsuit has been commenced against you (or the entity on whose behalf you are addressed).  A copy of the complaint is attached to this notice.  It has been filed in the United States District Court for the (D) _____ District of _____ and has been assigned docket number (E) _____ .

      This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint.  The cost of service will be avoided if I receive a signed copy of the waiver within (F) _____ days after the date designated below as the date on which this Notice and Request is sent.  I enclose a stamped and addressed envelope (or other means of cost-free return) for your use.  An extra copy of the waiver is also attached for your records.

      If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you.  The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

      If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service.  In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

      I affirm that this request is being sent to you on behalf of the plaintiff, this _____ day of _____ , _____ .

_____
Signature of Plaintiff's Attorney
or Unrepresented Plaintiff

A—Name of individual defendant (or name of officer or agent of corporate defendant)
B—Title, or other relationship of individual to corporate defendant
C—Name of corporate defendant, if any
D—District
E—Docket number of action
F—Addressee must be given at least 30 days (60 days if located in foreign country) in which to return waiver

**United States District Court**

**District of**
**Colorado**

## WAIVER OF SERVICE OF SUMMONS

V.

CASE NUMBER:

## NOTICE

TO:

I acknowledge receipt of your request that I waive service of summons in the action of _____

Caption of Action

_____, which is case number _____ in the United States District Court for the District of

Docket Number

Colorado. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after _____, (date request was sent), or within 90 days after that date if the request was sent outside the United States.

_____                         _____
(Date)                                                         (Signature)

Printed/Typed Name: _____

[as _____ ]
[of _____ ]

**Duty to Avoid Unnecessary Costs of Service of Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

**United States District Court**

**District of**
**Colorado**

## WAIVER OF SERVICE OF SUMMONS

V.

CASE NUMBER:

### NOTICE

TO:

I acknowledge receipt of your request that I waive service of summons in the action of _____

Caption of Action

_____,which is case number _____in the United States District Court for the District of

Docket Number

Colorado.  I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after _____, (date  request was sent), or within 90 days after that date if the request was sent outside the United States.

| _____ | _____ |
|---|---|
| (Date) | (Signature) |

Printed/Typed Name: _____

[as _____ ]

[of _____ ]

Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint.  A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property.  A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court.  If the answer or motion is not served within this time, a default judgment may be taken against that defendant.  By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.